STATE OF CONNECTICUT *v.* JAMES WHITFIELD
(AC 22425)

Lavery, C. J., and Bishop and Hennessy, Js.

---

Argued December 4, 2002—officially released February 18, 2003

*Gerald E. Bodell,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Gail P. Hardy,* assistant state's attorney, for the appellee (state).

BISHOP, J. The defendant, James Whitfield, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and one count of risk of injury to a child in violation of General Statutes § 53-21 (2). The defendant had been charged in a four count information alleging two counts of sexual assault in the first degree and two counts of risk of injury to a child. The information alleged that the offenses occurred on two separate occasions involving the minor victims, N and M.[1] The jury returned a guilty verdict on the counts applicable to N and acquitted the defendant on the counts applicable to M.

On appeal, the defendant claims that the court improperly (1) admitted into evidence certain constancy of accusation testimony, (2) denied him access to certain records of the department of children and families (department), (3) joined together the trial of two separate offenses of sexual assault and risk of injury involving two minors who are sisters and (4) denied his motion for a judgment of acquittal. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. In 1995, the defendant was a church elder[2] in the Church of God in Christ and became engaged to a woman who was an organist, youth leader and choir director at a congregation of the church different from that of the defendant. During that time, the defendant attended church with his fiancee and was introduced there as an elder. N and M, thirteen and fifteen years

[1] In keeping with our policy to protect the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be revealed. See General Statutes § 54-86e.

[2] An elder is a position of rank and leadership within the church enabling the individual who holds it to perform certain functions such as counseling, preaching, evangelization, and officiating at marriages and funerals.

of age, respectively, had been attending the church for the majority of their lives. As a consequence of his frequent attendance at the church and his relationship with his fiancee, the defendant often was in the presence of the children, whom he befriended. From time to time, the defendant would give the children rides to church functions and, on one occasion, took N and her younger siblings to an amusement park.

On the morning of February 5, 1996,[3] N was waiting for the school bus when the defendant approached in his automobile and asked her if she would like a ride to school. Once N was in the automobile, the defendant initially drove in the direction of N's school, but then told her he had to stop at his apartment to make a telephone call. N accompanied the defendant to his apartment and sat on the couch in the living room while he spoke on the telephone in his bedroom. After completing the conversation, the defendant entered the living room and began to remove N's clothing. As N attempted to move to leave the apartment, the defendant restrained her by grabbing her back and pulling her arms. Warding off N's attempts to strike him, the defendant took her to his bedroom where he forcibly removed the remainder of her clothing and had vaginal intercourse with her while restraining her with his superior weight and force. After the assault, N dressed herself and told the defendant of her intention to report the incident to someone. Because the defendant refused to take N to school, she remained in his apartment until he took her to her home in the early afternoon.

N skipped school on the following two days and spent those days walking the streets, contemplating who to tell about the assault. Subsequently, N told a health

---

[3] It should be noted that M also accused the defendant of sexually assaulting her on February 14, 1996, in a manner similar to his assault on N. Because the defendant was acquitted of the alleged assault on M, the facts pertaining to that allegation will not be discussed.

teacher at her school and her godmother, who, in turn, reported the incident to N's mother. Once N knew that her mother had been told, N then spoke directly with her mother about the assault. The mother then took N to the police station to make a sexual assault complaint and to a physician for an examination. The defendant subsequently was arrested on a warrant and thereafter convicted of the charges relative to the February 5, 1996 incident involving N. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly admitted into evidence certain constancy of accusation testimony. We do not agree.

At trial, the state's first witness was Detective Karen Cerutti. She testified that on April 1, 1996, she took a sexual assault complaint from two young girls in the course of which she interviewed them and prepared a report that was transmitted to Lieutenant Kathleen Wilson. Cerutti also took into police inventory a gold ring given to her by one of the children. Cerutti did not testify as to the contents of her interviews.

The state next called Wilson, who testified that after she received an internal police document setting forth a complaint of sexual assault of two minor females, she arranged to have N and M brought to the police station, where on May 1, 1996, she took statements from them. During her testimony, Wilson confirmed that two documents marked for identification by the state were, in fact, the statements given by the children. She did not reiterate the substance of the children's claims, but indicated that the person accused of the offenses was the defendant. The statements were not offered into evidence through Wilson as full exhibits.

The state's next witness was N. She testified as to the events of February 5, 1996, describing the assault

as previously discussed. She testified that she had told her health teacher and godmother that the defendant had "raped" her. Although she was not certain of the dates when she told them of the assault, she believed that she made the disclosures at the end of February or early March, 1996. N testified that although she did not initially inform her mother, once the godmother told N's mother and the mother told N of her awareness, N then confirmed the incident to her mother. N also testified that M had told her that she, too, had been "raped" by the defendant. N then related her experience with the defendant to M. Finally, N testified that she had spoken with a police officer and signed a statement at the police department that the defendant had sexually assaulted her.

The state then called M to testify. M testified that on February 14, 1996, the defendant sexually assaulted her at his apartment. Her testimony as to that alleged assault was, in many respects, parallel to N's recitation of the February 5, 1996 assault. M testified that she reported the alleged assault to N's godmother, to the police and to a physician. She also confirmed the alleged assault when confronted by her mother, and spoke with N about it and about the February 5, 1996 assault of N.

After the testimony of N and M, the health teacher testified that N had told her that a minister had sexually assaulted her. The health teacher gave no details of her conversation with N. Following the health teacher's testimony, the court gave a limiting instruction to the jury that the testimony of a constancy of accusation witness had been admitted into evidence for the sole purpose of corroborating N's testimony.

The godmother next testified that in March, 1996, N had told her that the defendant picked her up at the bus stop and took her to his apartment where he had sex with her. The godmother testified that she told N

that she was going to report the incident to N's mother. The godmother also testified that on the same day, M had told her that the defendant had sexually assaulted her as well. The children's mother next testified that once she found out about the February 5, 1996 assault of N and the alleged February 14, 1996 assault of M, she took the children to the police department and to a physician.

The state's last witness, a pediatrician, testified that on April 3, 1996, she saw both children, who had been brought to her office by their mother because they had told the mother that they had been sexually assaulted. Because the pediatrician had not personally examined N or M and because the physician's assistant in her office who conducted the examinations was unavailable to testify, the pediatrician was not asked about the physical examinations.

The defendant claims that the court improperly admitted into evidence the constancy of accusation testimony of each of the children concerning the other's claims, and the testimony of the health teacher, the godmother and the children's mother. The defendant also asserts in his brief that "to some extent," the two police officers were improper constancy witnesses. The defendant further contends that the harm caused by the improper admission of the testimony was compounded by the court's failure to give a proper jury instruction regarding the limited purpose for which such evidence may be considered.

Although the defendant, at oral argument, urged this court to view his constancy of accusation claims as implicating his right to a fair trial, neither his statement of the issues on appeal nor the argument in his brief sets forth any basis for this court to consider his claims to have a constitutional dimension. Additionally, although counsel made conclusory claims that the

admission of the testimony, considered en toto, violated the defendant's right to a fair trial, he has provided this court with no analysis for a claim of such magnitude.

The defendant's predicament is understandable. Notwithstanding his present claims that the trial court should not have admitted constancy of accusation testimony, the defendant raised no objections at trial to any of the constancy testimony and took no exceptions to the court's cautionary charge to the jury during the trial or to the charge at the end of the evidence. This court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5.

In light of our Supreme Court's opinion in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc), however, and mindful that the cumulative effect of improperly admitted constancy testimony could implicate a defendant's right to a fair trial, we have reviewed the trial proceedings to determine if, when viewed as a whole, the admission of the constancy testimony violated the defendant's right to a fair trial. We conclude that it did not. In the main, the constancy testimony closely tracked the parameters espoused in *Troupe* for such testimony.[4]

N testified that she reported the assault to the health teacher, to M and to her mother once the latter confronted N with her knowledge of the claim. In turn, those witnesses testified that N had reported that she had been "raped" by the defendant. In addition, N reported to her godmother that the defendant had

---

[4] "[A] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator." *State* v. *Troupe*, supra, 237 Conn. 304.

picked her up at the bus stop. Thus, none of the constancy witnesses testified as to the details beyond the limitations set by the court in *Troupe* and, with each witness, the testimony fairly corroborated N's prior testimony as to what she had reported to them.

The defendant only obliquely claims that the police officers were constancy witnesses in his assertion that "to some extent," they provided constancy testimony. He asserts that their evidence was admitted improperly because they testified before N and M. We would agree with the defendant as to the proper sequence of testimony if, in fact, both officers had been offered as constancy witnesses. To the contrary, in her testimony, Cerutti testified only that she took a sexual assault complaint from "two young girls" and took into evidence a gold ring given to her by one of them. At no time during her testimony did she report what had been told to her.

The second officer to testify, Wilson, did state that she took statements from N and M after receiving an internal complaint of a sexual assault of two minor females and that during the interview process, the defendant had been identified as the perpetrator. We agree with the defendant that a fair understanding of Wilson's testimony was that at least a portion of it was to establish that N and M had, in fact, made a complaint to her that they had been sexually assaulted by the defendant. As such, Wilson's testimony should have been offered after the victims had testified so as to corroborate their testimony that they had reported the assaults to the police. We do not find, however, that this evidentiary misstep denied the defendant a fair trial because Wilson's statement contained no inflammatory material beyond the basic allegation made by each child that each had been sexually assaulted, each child later testified in harmony with Wilson's testimony and the

remainder of the constancy testimony was well in accord with the parameters established by *Troupe*.

## II

The defendant next claims that the court improperly prevented him from having access to certain department records in violation of his sixth amendment right to confrontation. His claim is without merit.

During the state's presentation of evidence, counsel for the defendant and the state engaged in a colloquy with the court regarding certain department records that had been subpoenaed. Defense counsel noted that he had been provided four pages of the records as part of pretrial proceedings after the court had conducted an in camera review of the records to determine which portions, if any, the defendant should be entitled to review. Defense counsel indicated to the court that he had attempted to subpoena a certain department worker, but had learned that she was out of the country on vacation and would not be available for several days.

Counsel then represented that the worker had investigated a complaint by M regarding a domestic situation,[5] but that the worker had reported to him that she had no independent recollection of the specific allegations M had made. Counsel indicated, however, that the worker had told him that she had written notes concern-

---

[5] N testified that in the latter part of 1995, when she and her sister had complained to the defendant that their mother was a strict disciplinarian, the defendant suggested that they tell school officials that their mother had been physically abusive. He told them that their mother would get into trouble and that they would be able to move from their home and possibly stay with him and his fiancee. N testified that although she did not follow the defendant's advice, M did make such an allegation that resulted in a department investigation.

M testified that the defendant had advised her, as a way to no longer have to live with her mother, to claim at school falsely that her mother had been physically abusing her. She subsequently made such an allegation, but in her testimony, she admitted that the complaint had been false.

ing her investigation and that a review of those notes could possibly refresh her recollection. As part of the colloquy with the state and the court, defense counsel requested that the worker have the opportunity to review the department file to determine if her notes were part of the file and, if so, to see if a review of her notes would refresh her recollection. Additionally, because of the worker's unavailability at that time, counsel requested and received a continuance of the trial. The trial thereupon recessed on February 21, 2001, and resumed on March 12, 2001.

Once the trial recommenced on March 12, 2001, the court and counsel engaged in a colloquy with the worker, in the absence of the jury, during which she indicated that she had no independent recollection of the domestic complaint she investigated in 1995. In response to the court's questions, the worker described, in general terms, the form of her investigative notes. Although the court did not express its purpose in questioning the worker, it is clear from the record that the court's purpose was to determine if it could identify her notes in an in camera review because, after discussing the issue of her access to the records, the court conducted an in camera review of the documents. Following its review, the court indicated to counsel that there was nothing in the department records that should be subject to disclosure beyond that already provided after the court's prior in camera review. As to the notes, the court stated that because it already had determined from its review of the file that no additional portions should be disclosed, and because the worker had an obligation to maintain the confidentiality of the department file, no useful purpose would be served by having her independently review the file. Defense counsel took exception to the court's ruling that the worker would not be given an opportunity to review the department file for the purpose of refreshing her recollection.

A review of the trial record makes clear that the records involved concerned an investigation by the department of an allegation made in 1995 that the children's mother had been physically abusive to them. It also is clear from the record that the claim had been dismissed by the department as unfounded and as having been made falsely.

As a preliminary matter, we note that General Statutes § 17a-28 prohibits the release of department records, subject to certain exceptions. Thus, department records enjoy a qualified privilege from disclosure. In *State* v. *Howard*, 221 Conn. 447, 459 n.10, 604 A.2d 1294 (1992), our Supreme Court stated that "[j]uvenile court records pertaining to neglect proceedings and encompassing information from [the department] are confidential and subject to disclosure to third parties only upon court order."

Procedurally, our courts have devised a method for determining whether disclosure should be made by first requiring counsel to lay a sufficient foundation. Once such a foundation has been established, the court should then conduct an in camera inspection to determine whether the records contain material relevant to the foundation established by the requesting party. *State* v. *Leduc*, 40 Conn. App. 233, 248–49, 670 A.2d 1309 (1996), on appeal after remand, 44 Conn. App. 744, 690 A.2d 1390, cert. denied, 241 Conn. 909, 695 A.2d 541 (1997).

In the present case, it is understandable that the defendant does not argue that the court failed to conduct an in camera review because the court, on two occasions, conducted such a review. Rather, the defendant asserts an undefined right to the records notwithstanding the court's determination after review that no further disclosure was warranted. The court determined that there was no additional undisclosed infor-

mation in the file relevant to the basis for disclosure advanced by the defendant. Although the defendant makes the conclusory claim that the failure of the court to provide the department records to him and to his potential witness, the department worker, prevented him from calling her to testify and, thus, violated his confrontation right, he has supplied this court with no reasoning to buttress his claim. Indeed, it is clear from the record that neither the defendant nor the state called the worker as a witness. Although the United States constitution's confrontation clause includes the right of a criminal defendant to confront witnesses against him, the defendant's claim that the failure of the court to disclose the department records prevented him from calling a witness to testify fails facially. The claim is without merit.

## III

The defendant next claims that the evidence was insufficient to support the jury's guilty verdict on counts one and two. We disagree.

At the conclusion of the state's case, the defendant sought a judgment of acquittal on the basis of his claim that the evidence was legally insufficient to convict him of the charges as to the February 5 or February 14, 1996 occurrences. After the court denied the motion, the defendant testified that he did not assault either child. He also testified that he did not tell either child to report falsely that their mother had been physically abusive to them.

"When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part task. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the

cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 237.

In the present case, N and the defendant testified. The facts recited by N, if credited by the jury, were sufficient to warrant the jury's conclusion of the defendant's guilt. It was within the jury's province to credit N's testimony and to disbelieve the defendant.[6] Accordingly, we conclude that the evidence was sufficient to establish the defendant's guilt of each of the counts of which he was convicted beyond a reasonable doubt.

## IV

The defendant's final claim is that the court improperly joined the trial of the first two counts relative to the February 5, 1996 assault on N, with the third and fourth counts alleging the February 14, 1996 assault on M.

The defendant's claim has not been preserved for review. In his brief and at oral argument, counsel failed to refer to any motion filed by the defendant at any time during the proceedings requesting severance of the charges. Although we decline to review the claim on the basis of an inadequate record,[7] we note as well

[6] See State v. Johnson, 57 Conn. App. 156, 748 A.2d 334, cert. denied, 253 Conn. 912, 754 A.2d 162 (2000). "As to any conflicting testimony provided by the state's witnesses, we follow the well established rule that we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . When conflicting testimony is presented, the jury may credit the testimony it finds believable. . . . Therefore, [t]he [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) Id., 164.

[7] See United Technologies Corp. v. Commission on Human Rights & Opportunities, 72 Conn. App. 212, 804 A.2d 1033, cert. denied, 262 Conn. 920, 812 A.2d 863 (2002). "It is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first

that the defendant has failed to demonstrate any prejudicial effect of having been tried on all four counts at once. Indeed, in light of his acquittal on the third and fourth counts, the defendant would be hard pressed to make such an argument.

The judgment is affirmed.

In this opinion the other judges concurred.

time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) Id., 223–24.