******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* REGINALD TERRY
(AC 35768)

DiPentima, C. J., and Beach and Lavery, Js.

*Argued September 16—officially released December 22, 2015*

(Appeal from Superior Court, judicial district of

Hartford, Suarez, J.)

*Kirstin B. Coffin*, assigned counsel, for the appellant (defendant).

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony Bochicchio*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Reginald Terry, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] On appeal, the defendant claims that (1) the evidence was insufficient to support the judgment of conviction, (2) the trial court provided an improper instruction in its jury charge, (3) the court abused its discretion by limiting the defendant's cross-examination of a witness regarding the victim's criminal record, and (4) the court provided an improper curative instruction to the jury. We affirm the judgment of the trial court.

Faced with conflicting evidence and testimony regarding the events in this case, the jury reasonably could have found the following facts.[2] Late in the evening on May 2, 2012, near 531 Garden Street in Hartford, the defendant stabbed Herman Waden in the chest with a knife during a verbal altercation. The assault took place in front of a multiunit, single story, horseshoe shaped apartment complex, within which was the apartment of Waden's sister.

That day Waden had been visiting his sister in her apartment. When Waden left, he "ran into [his] friend" Anthony McKenzie. They talked outside of the apartment complex near a fence that had multiple openings and ran parallel to the sidewalk along Garden Street. A short time later, the defendant approached the men.

During the unexpected encounter, Waden accused the defendant of stealing from Waden's brother, who was dating the defendant's mother. He demanded that the defendant stop taking his brother's money, otherwise he and the defendant would "have problems." The defendant then stabbed Waden in the chest as McKenzie grabbed the defendant's arm to stop him. Waden then fled to his sister's apartment. Unable to enter the front door, Waden walked to the back door of his sister's apartment, where he collapsed and later was found by the police. Waden was transported to a hospital where he stayed for approximately two weeks. Before being discharged, Waden provided a statement to the police department concerning the assault.

The defendant was arrested and charged two weeks after the assault. Following a three day jury trial, the defendant was found guilty. The court sentenced him to fifteen years of incarceration and to five years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to support the judgment of conviction of assault in the first degree. Specifically, he contends that the state failed to disprove the justification defense of

self-defense beyond a reasonable doubt. We are not persuaded.

We first set forth additional facts that are relevant to this claim. Following his arrest, the defendant provided the investigating officer, Detective Anthony Rykowski of the Hartford Police Department, a voluntary statement. At trial, the state produced the defendant's statement, the court admitted it into evidence as a full exhibit, and the statement was read to the jury. In the statement, the defendant claimed that McKenzie and he were talking outside the apartment complex where Waden's sister lived. According to the defendant, Waden approached them and accused the defendant of stealing from Waden's brother. After denying Waden's allegation, the defendant told Waden to "leave [him] alone and to go about his business . . . ." However, "every time [the defendant] moved, [Waden] moved." The defendant saw Waden "digging in his pockets," which prompted him to take out his knife, aim for Waden's chest, and "hit" him with the knife despite McKenzie's attempt to stop the defendant. The defendant explicitly stated in his voluntary statement that if he had had a gun, he would have shot Waden. The defendant concluded his voluntary statement with: "I told [Waden] I was the wrong person to fuck with, and he didn't listen."

The state also presented Waden as a witness. He testified to the events of the day of the assault. Specifically, he testified to his version of the assault, to having been convicted of felonies and violent misdemeanors,[3] to ingesting cocaine earlier in the day of the assault, and to providing a statement to the police while hospitalized, which was admitted into evidence as a full exhibit. As to the statement given to police while in the hospital, Waden testified that he was "dizzy on the drugs" and that he "really [did not] know what [he] was really saying . . . ."

On cross-examination, the defendant attempted to impeach Waden on three grounds. First, the defendant pressed Waden on his convictions, namely, carrying a dangerous weapon and other violent crimes. Waden explained that the dangerous weapon conviction stemmed from an incident that occurred while he was transporting a pistol from his old residence to his new one. Although he knew that a felon cannot legally own a pistol, Waden testified that he nevertheless kept the pistol *inside* his home to protect his children. As to the various convictions of violent crimes, Waden testified that those were a "record about fistfights," but he "never tried to kill nobody."

The defendant next attacked Waden's credibility by cross-examining him on his alcohol and drug use. The defendant sought to impeach Waden's testimony concerning his alcohol use by pointing to medical records, which were admitted previously into evidence as a full

exhibit, noting that he was addicted to alcohol. Waden denied this allegation, claiming that his father's alcoholism "turned [him] off" alcohol, and testified that he did not drink much. Waden testified that he was not an alcoholic despite being longtime drug user, characterizing himself as a "[function]al addict." Defense counsel then sought to attack Waden's testimony by cross-examining him on his drug use. Specifically, Waden was asked whether he was "coked up" on the night of the assault. He replied that he was not "coked up" to such a degree that he could not remember the events of that night.

Finally, the defendant attempted to impeach Waden's version of the assault through Waden's prior statement to the police while hospitalized. The statement was inconsistent with Waden's testimony as to certain facts leading up to the assault. Specifically, in the prior statement Waden had said that he and the defendant were having a conversation when the defendant asked for money to buy cocaine. He refused, and, as he was walking away, the defendant threw something at him. Waden returned and punched the defendant in the face. According to Waden's statement, the defendant then stabbed him twice. Waden's statement did not mention McKenzie or that the defendant had robbed his brother. Throughout the cross-examination regarding his statement, however, Waden was adamant that because of his condition while in the hospital, i.e., medicated and "in a lot of pain," he likely "[said] anything" to "get rid of [the detectives]," and did not remember what he said at that time.

The defendant's theory of self-defense was that he reasonably believed Waden was about to use deadly force and that he was unable to safely retreat. Specifically, the defendant argues that his version of the events—Waden's confronting him, refusing to leave the defendant alone, and "digging in his pockets"—demonstrates that he was justified to stab Waden in self-defense. Also, the defendant claims that no evidence was adduced at trial showing that he could safely retreat. We are not persuaded.

At the outset, we note that the defendant preserved this claim by moving for a judgment of acquittal at the close of the state's case and his case.[4] See *State* v. *Calabrese*, 279 Conn. 393, 401, 902 A.2d 1044 (2006); Practice Book §§ 42-40 and 42-42. Next, we set forth the controlling law for a sufficiency claim. "On appeal, the standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence. . . . In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences

reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 778, 99 A.3d 1130 (2014), cert. denied,    U.S.   , 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015).

The claim of self-defense is a justification defense. Hence, it "operate[s] to exempt from punishment otherwise criminal conduct when the harm from such conduct is deemed to be outweighed by the need to avoid an even greater harm or to further a greater societal interest. . . . Thus, conduct that is found to be justified is, under the circumstances, not criminal." (Internal quotation marks omitted.) *State* v. *James E.*, 154 Conn. App. 795, 813, 112 A.3d 791 (2015).

General Statutes § 53a-19 governs the use of deadly force for self-defense.[5] "Our Supreme Court has interpreted § 53a-19 (a) to require that a person may justifiably use deadly physical force in self-defense only if he reasonably believes both that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such an attack." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 88, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003).

"The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. . . . [T]he jury must [first] determine whether, on the basis of all of the evidence presented, the defendant in fact had believed that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . The jury's initial determination, therefore, requires the jury to assess the veracity of witnesses, often including the defendant, and to determine whether the defendant's account of his belief in the necessity to use deadly force at the time of the confrontation is in fact credible. This probe into the defendant's actual state of mind clearly demonstrates the function of the jury in [its] evaluation of the self-defense claim. . . . If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail.

"If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a [second] determination as to whether that belief was reasonable, from the perspective of a reasonable person in the defendant's circumstances. . . . Thus, if a jury determines that the

defendant's honest belief that he had needed to use deadly force, instead of some lesser degree of force, was not a reasonable belief, the defendant is not entitled to the protection of § 53a-19." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 286–87, 664 A.2d 743 (1995).

"Whether the defense of the justified use of force . . . has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 571–72, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Ovechka*, 292 Conn. 533, 540–41, 975 A.2d 1 (2009).

Finally, "[w]e also are mindful that [q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . [A] jury may draw reasonable and logical inferences from the facts proven, but it may not resort to speculation and conjecture." (Citation omitted; internal quotation marks omitted.) *State* v. *James E.*, supra, 154 Conn. App. 802–803. Guided by these principles, we turn to the specifics of the defendant's sufficiency claim.

The jury reasonably could have concluded that the defendant did not act in self-defense. See *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391 ("the jury [is] entitled to draw, from conflicting evidence . . . reasonable inferences that reject the defendant's theories"), cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). On the basis of the evidence, the jury was free to disbelieve the defendant's voluntary statement and to conclude beyond a reasonable doubt that he could not reasonably have believed that he was faced with the imminent use of deadly physical force or that the degree of deadly physical force that he used against Waden was necessary to defend himself. Waden's testimony and the defendant's voluntary statement established that there was a verbal altercation. The defendant's voluntary statement established that

Waden did not use any physical force (much less deadly physical force) against the defendant, but he nonetheless stabbed Waden after seeing him "digging in his pockets." No evidence was presented that indicated that the defendant knew about Waden's extensive criminal record, nor did any evidence show that Waden, in the past, had ever attempted to use deadly physical force on the defendant. Cf. *State* v. *Abney*, 88 Conn. App. 495, 504, 869 A.2d 1263 (concluding that "the court abused its discretion by excluding the medical records regarding the defendant's emergency medical care . . . because that evidence of a prior incident of an assault on the defendant would have been relevant to show that she reasonably feared for her safety"), cert. denied, 274 Conn. 906, 876 A.2d 1199 (2005). As the sole trier of fact, the jury was within its right to reject the defendant's theory and accept Waden's version. See *State* v. *Osbourne*, supra, 138 Conn. App. 534. We reiterate the point that we defer to the jury's assessment of all witnesses, and we do not substitute our own judgment for that of the jury if there is sufficient evidence to support its verdict. See *State* v. *Whitfield*, supra, 75 Conn. App. 214 n.6. Therefore, we conclude that the jury reasonably could have rejected the defendant's self-defense claim.

The jury also reasonably could have concluded that the defendant had the ability to safely retreat. See *Miller* v. *Commissioner of Correction*, 154 Conn. App. 78, 90, 105 A.3d 294 (2014) ("a defendant who raises a claim of self-defense is required to retreat in lieu of using deadly physical force if the state establishes beyond a reasonable doubt that a completely safe retreat was available and that the defendant actually was aware of it" [internal quotation marks omitted]), cert. denied, 315 Conn. 920, 107 A.3d 959 (2015). The state presented evidence that the altercation between Waden and the defendant took place near a fence with multiple openings that ran along the sidewalk paralleling Garden Street. Also, both the state and the defendant presented evidence that established that Waden did not physically restrain the defendant. Therefore, the evidence presented at trial contradicts the defendant's claim on appeal. Accordingly, the jury reasonably could have concluded that, because the defendant was not physically restrained and the evidence presented by the state showed that there were multiple access points along the fence by which to leave, the defendant could have retreated without jeopardizing his "complete safety . . . ." General Statutes § 53a-19 (b).

The jury could credit the testimony of the witness presented by the state and was free to reject the defendant's justification defense. Thus, construing the evidence in the light most favorable to sustaining the verdict, we determine that the jury reasonably could have concluded that the cumulative force of the evidence established that the state disproved the justification defense of self-defense beyond a reasonable doubt.

## II

The defendant next claims that the court provided an improper instruction in its jury charge that prejudiced him to the extent that his federal and state constitutional rights to a fair trial were violated. Specifically, the defendant argues that the court improperly instructed the jury that Waden's testimony concerning his prior convictions was admissible only to address his credibility. The defendant concedes that this claim is unpreserved, but, nevertheless, seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] We conclude that, pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011),[7] the defendant has implicitly waived this challenge to the relevant jury instruction and, therefore, is not entitled to *Golding* review.[8]

The following facts are necessary for the resolution of this claim. The court provided both parties with its proposed jury instructions on the second day of a three day trial. Because this was the first time either counsel had received the instructions, the court recessed for approximately thirty minutes to allow the parties to review the proposed jury instructions. Upon return, the court proceeded with the charging conference. When it asked defense counsel whether he had had sufficient time to review the charge, counsel replied in the affirmative and added that he had "no requests [or] . . . any objections." The court, then, was prepared to proceed with closing arguments, but the state preemptively objected to the defendant's closing argument. The state requested that the defendant refrain from "arguing to the jury that [the defendant] was aware of [Waden's] violent criminal past" because "[there was] no evidence that [the defendant] had any knowledge of it, [therefore, he could not now argue that it] affected his state of mind . . . ." After a brief discussion, the court allowed the defendant to ask the jury to "take inferences from whatever evidence exists," but warned the defendant, to the "extent that [he argues] that [the defendant] actually knew of [Waden's] violent criminal past . . . that may be left for an inference . . . ." Afterward, both counsel proceeded with their closing arguments.

The following day, the court and both counsel conducted a charge conference off the record.[9] After the court, on the record, solicited comment from both counsel but before the charge was read to the jury, the defendant, again, did not request any modifications or changes, and did not object. The court ultimately instructed the jury that Waden's testimonial evidence regarding his criminal history was "offered and admitted . . . for one purpose only, to address the question of [the] credibility or believability of that witness."

The defendant argues that the court improperly instructed the jury that Waden's testimony concerning

his prior convictions was admissible only to address his credibility. He claims that Waden's prior convictions were not only relevant to his credibility, but also to show that the defendant had a reasonable belief that Waden was going to attack and that Waden was the initial aggressor. We disagree.[10]

We first set forth the law that guides our analysis. To determine whether the defendant's claim is reviewable under *Golding*, we first consider whether that claim was waived at trial. "A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . [I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467; see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding* by eliminating *clearly* exists and *clearly* deprived defendant of fair trial).

"[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83. Our Supreme Court in *Kitchens* directed that "[s]uch a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." Id., 483.

We conclude that upon a close examination of the record and the particular facts and circumstances of this case, the defendant implicitly waived his constitutional right to challenge the instructions on direct appeal. The recent decision in *State* v. *Davis*, 311 Conn. 468, 88 A.3d 445 (2014), is instructive. In that case, "the trial court did not provide counsel with the actual proposed instructions . . . ." Id., 481. Rather, it stated to defense counsel that the trial court "intended to deliver the model instructions [on the Judicial Branch website] 'in essence, maybe not exactly' . . . ." Id., 479. Our Supreme Court concluded that the trial court's unclear and ambiguous reference to the model instructions on the Judicial Branch website did not meet the standard for an implied waiver. Id. Thus, the court in *Davis* articulated that the "threshold question for [a *Kitchens*' implied waiver doctrine] analysis is whether

the trial court provided the proposed charges to the defendant prior to delivery of its instructions to the jury." Id., 480; cf. *State* v. *Baptiste*, 302 Conn. 46, 56, 23 A.3d 1233 (2011) ("[t]here is . . . no indication on the record that the trial court provided the defendant with an advance copy of the [charge; therefore] . . . there is simply no record that the defendant was afforded a meaningful opportunity to review the proposed charge").

Here, defense counsel was provided with a copy of the proposed instructions on the second day of a three day trial. The defendant correctly points out that defense counsel initially was given only approximately thirty minutes to read the proposed instructions before being given the opportunity to alert the court to any potential issues. Although we decline to rule whether thirty minutes is sufficient time, we note that the defendant had the proposed instructions overnight, which allowed a meaningful opportunity to review them and to alert the court to any potential issues at the start of the third day of trial.

Defense counsel in the present case, having been provided with a copy of the jury instructions and a meaningful opportunity to review them and to alert the court to any potential issues, declined to object in any way to the portion of the charge instructing the jury that Waden's testimony about his convictions was admissible only to address his credibility, and affirmatively expressed his satisfaction with the content of the instructions. We also note that the instruction at issue "was not buried in the charge." *State* v. *Thomas W.*, 301 Conn. 724, 735, 22 A.3d 1242 (2011). Under these circumstances, the defendant has waived his claim of instructional error and, accordingly, it does not satisfy the third prong of *Golding*. See *State* v. *Kitchens*, supra, 299 Conn. 467.

### III

The defendant next argues the court abused its discretion by limiting his cross-examination of Rykowski regarding Waden's criminal record. He also argues that this evidentiary ruling was harmful error.[11] Specifically, he contends that §§ 4-4 (a) (2)[12] and 4-5 (d)[13] of the Connecticut Code of Evidence provide the mechanism by which the line of questioning was admissible. The defendant did not raise this claim at trial, nor did he request review of the claim under *Golding* or the plain error doctrine. Therefore, we decline to review this unpreserved evidentiary claim.[14]

The following additional facts provide the necessary context. During cross-examination, the defendant attempted to elicit testimony from Rykowski concerning Waden's criminal record. When Rykowski testified to learning that Waden had "several arrests," the defendant proceeded to ask, "Wouldn't seventy-three be more

accurate?" The state objected, and the court excused the jury.

In the colloquy that followed, the state articulated its ground for objecting to the defendant's question arguing that the number of Waden's arrests was irrelevant because there was no foundation establishing whether (1) the arrests were convictions, (2) any of the convictions were within ten years, and (3) any of the arrests were related to violent crimes. Defense counsel withdrew the question and continued the cross-examination of Rykowski outside the presence of the jury.

Defense counsel again sought to elicit testimony from Rykowski regarding Waden's criminal record. This time, the line of questioning was as follows:

"[Defense Counsel]: As part of your background, do you get a detailed arrest inquiry?

"[Rykowski]: Yes, sir.

"[Defense Counsel]: And it's important for you to notice the background of either the victim or a witness, isn't it?

"[Rykowski]: Correct.

"[Defense Counsel]: That involves consideration for community safety as well as safety of the officers.

"[Rykowski]: Absolutely.

"[Defense Counsel]: The detailed arrest inquiry, that's something you always do, isn't it.

"[Rykowski]: Correct, sir.

"[Defense Counsel]: And it indicates that, in fact, the alleged victim in this case is a career criminal."

The state objected on relevance grounds. Defense counsel conceded that he would address the convictions in detail through Waden, but was seeking to "highlight some of the felonies that [Waden has] been convicted of" through Rykowski. When pressed by the court as to what section of the Connecticut Code of Evidence rendered such questioning admissible, defense counsel argued that because Waden's criminal record was part of the investigation, it was admissible testimony through the investigating officer, Rykowski. After the court sustained the state's objection, defense counsel argued that characterizing Waden's criminal record as a "substantial criminal record" would be "fair" because it omitted the number of arrests. The state did not agree, and the court ruled that Waden's criminal record was not admissible through Rykowski.

We set forth the applicable law that guides our disposition of this claim. "We previously have stated that the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Internal quotation marks

omitted.) *State* v. *Epps*, 105 Conn. App. 84, 97, 936 A.2d 701 (2007), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008). Therefore, "[e]videntiary claims do not merit review pursuant to *Golding* . . . because they are not of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Ruffin*, 144 Conn. App. 387, 398–99, 71 A.3d 695 (2013), aff'd, 316 Conn. 20, 110 A.3d 1225 (2015). Accordingly, in the absence of such constitutional or fundamental fairness issues, we review this claim only if it was adequately raised.

The record before us demonstrates that the defendant did not preserve the precise claim that he now makes on appeal. The trial transcript shows that after the state's objection, the court inquired as to what section of the Connecticut Code of Evidence applied to permit the proposed cross-examination. Defense counsel neither specified the code section nor stated the grounds he now raises on appeal. Without citing any legal authority, defense counsel advanced the notion that because Waden's criminal record was part of Rykowski's investigation, it was admissible. Although defense counsel consented to not "[asking Rykowski] any further questions in regard to the criminal background of the alleged victim," he sought the court's permission to classify Waden's criminal record as "substantial." This request was rejected by the court without further argument from the defendant. It is clear that this evidentiary claim was unpreserved at trial. As a consequence, the defendant's claim must fail on appeal.[15]

IV

The defendant's final claim is that the court provided an improper curative instruction to the jury in response to a question by defense counsel, and that this error prejudiced (1) his federal and state constitutional rights, as well as his statutory right, to present a defense, and (2) his federal and state constitutional rights to confront a witness. On appeal, the defendant concedes that this claim was unpreserved but seeks *Golding* review[16] or, in the alternative, seeks to invoke the plain error doctrine pursuant to Practice Book § 60-5. We decline to review this unpreserved evidentiary claim.

The following additional facts are necessary for the resolution of this claim. After defense counsel commented on Waden's seventy-three arrests, the jury was excused from the courtroom. Upon its return, the court provided the following curative instruction to the jury: "Ladies and gentlemen, there was an objection made by the state, and the court has sustained the objection. I should instruct you at this time that you are not to consider *the* [*defendant's*] *criminal past* as any indication at all in your deliberations." (Emphasis added.) The defendant did not object or seek to correct the court but did continue to cross-examine Rykowski.

Although the defendant acknowledges that "the court

probably misspoke and intended to refer to the victim, as the instruction was made in the context of the state's objection to the victim's criminal record being admitted through . . . Rykowski," he still contends that it was "extremely prejudicial." We disagree.

As previously discussed, unpreserved "[e]videntiary claims do not merit review pursuant to *Golding* . . . because they are not of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Ruffin*, supra, 144 Conn. App. 398–99. In the present case, the defendant did not object to the court's curative instruction. "If defense counsel believed that the court . . . misspoke and that this somehow was misleading, he should have brought it to the attention of the judge." *State* v. *Melendez*, 74 Conn. App. 215, 228–29, 811 A.2d 261 (2002), cert. denied, 262 Conn. 951, 817 A.2d 111 (2003). Accordingly, we decline to review the defendant's claim under *Golding*.

We also decline to review the defendant's claim under the plain error doctrine. Pursuant to Practice Book § 60-5, the plain error doctrine "is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, a] defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 647–48 n.16, 945 A.2d 449 (2008).

"To prevail on this claim . . . the defendant must establish that it was reasonably probable that the jury was misled by the court's instruction." *State* v. *Davis*, 32 Conn. App. 21, 34, 628 A.2d 11 (1993). Moreover, it is understood that "the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary." (Internal quotation marks omitted.) *State* v. *Luther*, 114 Conn. App. 799, 807, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009).

In the present case, the defendant has not demon-

strated how the misspoken curative instruction was so harmful as to warrant reversing a jury's verdict of guilty beyond a reasonable doubt. Indeed, the defendant puts forth sweeping, speculative generalizations of harm, i.e., the curative instruction "deprived the defendant of his right of confrontation" and "categorically discounted . . . the potential impact of Waden's history of violence on the defendant's self-defense claim." Our review of the record, however, does not support the defendant's claims.

The record indicates that the court's misspoken curative instruction did not significantly impact the defendant to the extent that he claims. When the curative instruction was given, there was no evidence indicating that the defendant had a criminal record. Thus, we decline to speculate on how the absence of evidence of the defendant's criminal record impacted the jury when considering the curative instruction, which was given in the context of Waden's criminal record. More importantly, in its final charge to the jury, the court explained that it "may consider only the evidence properly admitted [which] . . . includes the sworn testimony of the witnesses both on direct and cross-examination . . . ." If we are to presume that a jury follows a "court's curative instruction in the absence of some indication to the contrary"; (internal quotation marks omitted) *State* v. *Luther*, supra, 114 Conn. App. 807; we can also presume that the jury, in this case, followed the court's jury charge and considered only properly admitted evidence, namely, Waden's criminal record and not the defendant's.[17] Therefore, we cannot conclude that the misspoken curative instruction "undermined the fairness or integrity of the trial afforded to the defendant . . . [or] that the verdict constituted manifest injustice to the defendant or will lead to diminished confidence in our judicial system." *State* v. *Toccaline*, 258 Conn. 542, 553, 783 A.2d 450 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ."

[2] "It is axiomatic that it is the jury's role as the sole trier of the facts to weigh the conflicting evidence and to determine the credibility of witnesses. . . . It is the right and duty of the jury to determine whether to accept or to reject the testimony of a witness . . . and what weight, if any, to lend to the testimony of a witness and the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Osbourne*, 138 Conn. App. 518, 533–34, 53 A.3d 284, cert. denied, 307 Conn. 937, 56 A.3d 716 (2012). "As to any conflicting testimony provided by the state's witnesses, we follow the well established rule that we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor, and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Whitfield*, 75 Conn. App. 201, 214 n.6, 815 A.2d 233, cert. denied, 263 Conn. 910, 819 A.2d 842 (2003); see also *State* v. *Rosado*, 147 Conn. App. 688, 696, 83 A.3d 351 (evidence not insufficient because it is conflicting or inconsistent), cert. denied, 311 Conn.

928, 86 A.3d 1058 (2014).

[3] On direct examination, Waden admitted that he had been convicted of ten felonies and violent misdemeanors between 1993 and 2011: violation of a protective order; assault in the third degree; threatening; robbery in the third degree; an unclassified felony; burglary in the third degree; carrying a dangerous weapon; assault in the third degree; another assault in the third degree; another unclassified felony; and robbery in the third degree.

[4] Even if this claim had not been preserved, we would review it on appeal. Our Supreme Court has "observed that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. . . . Accordingly, because there is no practical significance . . . for engaging in a *Golding* analysis, we review an unpreserved sufficiency of the evidence claim as though it had been preserved." (Citation omitted; internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 777, 99 A.3d 1130 (2014), cert. denied, U.S.     , 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015).

[5] General Statutes § 53a-19 provides in relevant part: "(a) Except as provided in [subsection] (b) . . . of this section . . . deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating . . . ."

General Statutes § 53a-3 (5) defines "[d]eadly physical force" as a "physical force which can be reasonably expected to cause death or serious physical injury . . . ."

[6] We will review an unpreserved claim when "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong).

[7] Although we note that our Supreme Court recently granted certification to appeal in *State* v. *Herring*, 151 Conn. App. 154, 94 A.3d 688, cert. granted, 314 Conn. 914, 100 A.3d 849 (2014), to decide whether *Kitchens* should be overruled, the holding in *Kitchens* presently remains binding upon this court.

[8] The defendant also seeks to invoke the plain error doctrine. See Practice Book § 60-5. "To the extent that the claim is amenable to review under the plain error doctrine, we are not persuaded that an error exists that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings or that the court's instructions caused the defendant to suffer manifest injustice." *State* v. *Bellamy*, 149 Conn. App. 665, 671 n.2, 89 A.3d 927, cert. granted on other grounds, 312 Conn. 914, 93 A.3d 597 (2014); see also *State* v. *Kitchens*, supra, 299 Conn. 474 n.18 ("the finding of a valid waiver precludes a finding that a jury instruction constitutes plain error because a valid waiver means that there is no error to correct"). Similarly here, we decline the defendant's invitation to invoke the plain error doctrine.

[9] We note that the court added a curative instruction to the jury charge, and both counsel were given the opportunity to review and discuss it off the record. The curative instruction addressed defense counsel's comment made during his closing argument concerning McKenzie's absence at trial. On the record, the court asked defense counsel if he had any objections to the curative instruction, which was added that morning. Defense counsel stated, "I do not believe that [there is] a problem with the instruction . . . ." The court explained that it was "the only difference from the jury charge that was provided to counsel" the day before. This curative instruction does not pertain to the defendant's claim on appeal.

We further note that the defendant did not submit a written request to charge. See *State* v. *Kitchens*, supra, 299 Conn. 493 ("Practice Book § 42-16 informs counsel that it is advisable to file a written request to charge and provides that there will be no appellate consideration of instructional error unless such a request is filed or an exception to the charge is taken

immediately following its delivery").

[10] Because we conclude that the evidence, viewed in the light most favorable to sustaining the verdict, was sufficient for the jury to reasonably conclude that the state disproved the self-defense claim beyond a reasonable doubt and that the defendant implicitly waived his instructional challenge, we need not address his claims that Waden's testimony regarding his prior convictions was relevant to show that the defendant had a reasonable belief that Waden was going to attack and that Waden was the initial aggressor.

[11] We note that the defendant does not claim that the court's evidentiary ruling violated his constitutional right to cross-examine Rykowski.

[12] Section 4-4 of the Connecticut Code of Evidence provides in relevant part: "(a) Character evidence generally. Evidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait on a particular occasion, except that the following is admissible . . .

"(2) Character of the victim in a . . . criminal assault case. Evidence offered by an accused in a . . . criminal assault case, after laying a foundation that the accused acted in self-defense, of the violent character of the victim to prove that the victim was the aggressor, or by the prosecution to rebut such evidence introduced by the accused. . . .

"(b) Methods of proof. In all cases in which evidence of a trait of character of a person is admissible to prove that the person acted in conformity with the character trait, proof may be made by testimony as to reputation or in the form of an opinion. In cases in which the accused in a . . . criminal assault case may introduce evidence of the violent character of the victim, the victim's character may also be proved by evidence of the victim's conviction of a crime of violence. . . ."

[13] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) General Rule. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person . . . .

"(d) Specific instances of conduct when character in issue. In cases in which character or a trait of character of a person in relation to a charge, claim or defense is in issue, proof shall be made by evidence of specific instances of the person's conduct."

[14] "It is well established that generally this court will not review claims that were not properly preserved in the trial court. . . . Where a defendant fails to seek review of an unpreserved claim under either [*State* v. *Golding*, supra, 213 Conn. 239–40] or the plain error doctrine [set forth in Practice Book § 60-5], this court will not examine such a claim." (Citation omitted; internal quotation marks omitted.) *State* v. *Epps*, 105 Conn. App. 84, 92, 936 A.2d 701 (2007), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008).

[15] Even if we were to assume, without deciding, that the court erred in precluding the defendant from cross-examining Rykowski concerning Waden's convictions of violent crimes, we would conclude that it was harmless error. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Eleck*, 314 Conn. 123, 129, 100 A.3d 817 (2014). After Waden testified on direct examination to the various convictions, defense counsel extensively cross-examined Waden and, thus, we have a fair assurance that if the court had erroneously limited the cross-examination of Rykowski, it would not have substantially affected the verdict.

[16] See footnote 6 of this opinion.

[17] We note that the record reveals that the defendant's criminal record, if any, was never introduced at trial.